UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:

CHINA VALVES TECHNOLOGY SECURITIES                    Master Docket
LITIGATION                                            11 Civ. 0796 (LAK)

This document applies to:                 All actions
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

William Bernard Federman                  Alfred Robert Pietrzak
FEDERMAN & SHERWOOD                        Joel M. Mitnick
                                           Daniel A. McLaughlin
Byron T. Ball                              SIDLEY AUSTIN LLP
THE BALL LAW FIRM, LLP
                                           *Attorneys for Defendant China Valves*
*Attorneys for Lead Plaintiff Bristol*     *Technology, Inc. and Individual Defendants*
*Investment Fund, Ltd.*
                                           Lawrence A. Steckman
                                           EATON & VAN WINKLE LLP

                                           *Attorneys for Defendant Moore Stephens*
                                           *Wurth Frazer and Torbett, LLP*


LEWIS A. KAPLAN, *District Judge*.

Lead plaintiff Bristol Investment Fund, Ltd. ("Bristol") and plaintiff Joseph Gibbons

("Gibbons") (collectively, "plaintiffs") filed an amended consolidated class action complaint

("CCAC") after this Court dismissed Bristol's amended complaint in full. Familiarity with the

Court's prior opinion is presumed.[1]  The Court now considers motions of defendants China Valves

---

[1]     *In re China Valves Tech. Sec. Litig.*, 11 Civ. 0796, 2012 WL 4039852 (S.D.N.Y. Sept. 12, 2012).

2

Technology, Inc. ("China Valves" or the "Company"), its named officers and directors ("Individual Defendants"), and the Company's auditors, Moore Stephens Wurth Frazer and Torbet, LLP ("Independent Auditors"), to dismiss the CCAC.

Bristol and Gibbons allege that China Valves and the Individual Defendants improperly failed to disclose material facts concerning the related party nature of two of the Company's acquisitions and a third transaction, and materially overstated China Valves' financial results in the registration statement made effective on December 14, 2009 (the "Registration Statement") and in the subsequent prospectus supplements (collectively, "Offering Documents") in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act")[2] and Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act").[3] They allege also that the Auditor Defendants are liable under Section 11 of the Securities Act and Section 10(b) of the Exchange Act for material misstatements made in the audit opinions that were incorporated in at least some of the Offering Documents.

*Background*

I.    *The Parties*

      A.    *Plaintiffs*

            Bristol, which was designated lead plaintiff on June 29, 2011,[4] alleges that it purchased China Valves securities "at artificially inflated prices during the [Relevant] Period and

---

[2]      15 U.S.C. §§ 78j(b), 78t(a).

[3]      15 U.S.C. §§ 77k(a), 77*l*(a)(2), 77o.

[4]      Order on Motion to Appoint Lead Plaintiff [DI 34].

purchased 100,000 shares pursuant and/or traceable to the Company's Registration Statement declared effective on December 14, 2009 and Prospectus Supplement filed with the SEC on January 5, 2011."[5] It alleges also that it purchased several thousand shares on January 12 and 13, 2011, although it does not allege that these purchases were pursuant and/or traceable to a Registration Statement.[6]

The CCAC adds as a plaintiff Joseph Gibbons, who is alleged to have "purchased China Valves securities on November 16, 2010 at artificially inflated prices."[7] The CCAC does not allege that this or any other purchase was pursuant and/or traceable to a Registration Statement. Accordingly, Gibbons cannot raise a claim under the Securities Act.

B.    *Defendants*

China Valves is a Nevada corporation with its principal place of business in Kaifeng City, China.[8] It purports to develop, manufacture, and sell metal pressure valves to customers in China.[9] At all relevant times, its common stock has traded on NASDAQ under the symbol "CVVT."[10]

---

[5]    CCAC ¶ 7.

[6]    *Id.*

[7]    *Id. ¶* 8.

[8]    *Id.* ¶ 9.

[9]    *Id.*

[10]    *Id.*

The Individual Defendants are ten officers and directors of China Valves.[11] Defendant Siping Fang is the Company's founder and chairman who, from the beginning of the Relevant Period through October 11, 2010, was the Company's chief executive officer.[12] He signed the 2009 10-K and Registration Statement.[13] Defendant Jianbao Wang served as China Valves' chief executive officer from October 11, 2010 through the end of the Relevant Period.[14] Defendants Gang Wei, Renrui Tang, and Ichi Shih served as the Company's chief financial officer at various times during the Relevant Period.[15] Defendant Binjie Fang served as China Valves' chief operating officer from January 2008 through the end of the Relevant Period, was a director, and signed the Company's 2009 10-K and Registration Statement.[16] Defendants Zengbiao Yu, Peter Li, and William Haus were directors and members of China Valves' audit committee; each signed the 2009 10-K and Registration Statement.[17] Defendant Bin Li is a 34 percent shareholder of the Company.[18]

The Auditor Defendants issued an audit opinion dated March 15, 2009 with respect

---

[11]  *Id.* ¶¶ 10-20.

[12]  *Id.* ¶ 10.

[13]  *Id.*

[14]  *Id.* ¶ 11.

[15]  *Id.* ¶¶ 12-14. Wei served from December 16, 2010 through the end of the Relevant Period, Tang from May 27, 2010 until December 16, 2010, and Shih from July 1, 2009 through May 27, 2010. Shih signed the 2009 10-K and Registration Statement.

[16]  *Id.* ¶ 15.

[17]  *Id.* ¶¶ 16-18.

[18]  *Id.* ¶ 19.

to the Company's financial statements for 2007 and 2008 and consented to its incorporation into the Offering Documents.[19] It issued another such opinion with respect to the financial statements incorporated into the Company's Form 10-K for 2009.[20]

II.      *Substantive Allegations*

    A.      *Changsha Valve Transaction*

On December 14, 2009, Able Delight Investment Limited ("Able Delight") agreed to purchase Watts Valve (Changsha) Company ("Changsha Valve"), a subsidiary of Watts Water Technologies, Inc. ("Watts Water").[21] Two months later, on February 8, 2010, China Valves announced in a press release and 8-K that it had entered into an asset purchase agreement with Changsha Valve/Able Delight for $15 million.[22]

Plaintiffs allege that defendants omitted two material facts regarding the Changsha Valve transaction in their public statements and SEC filings. First, they allege that the defendants failed to disclose that the deal was a related-party transaction in which Qing Lu, the wife of China Valves' 34 percent shareholder Bin Li, formed Able Delight at China Valves' behest.[23] Second, they allege that the defendants failed to disclose that Changsha Valve was the subject of an investigation

---

[19]    *Id.* ¶ 21.

[20]    *Id.*

[21]    *Id.* ¶ 67.

[22]    *Id.* ¶ 66.

[23]    *Id.* ¶¶ 68-69.

for possible Foreign Corrupt Practices Act ("FCPA") violations when China Valves purchased it.[24] Plaintiffs allege additionally that China Valves misstated the purchase price, which the Company's filing with China's State Administration for Industry and Commerce ("SAIC") listed as $6.07 million – $8.93 million less than the amount that the company announced to the public.[25]

China Valves filed an amended 8-K on November 18, 2010 ("November 8-K"), explaining that it acquired Changsha Valve through Able Delight, that it had arranged for Qing Lu to form Able Delight, that the $8.93 million difference in the publicly announced price and the SAIC price represented money used to satisfy Changsha Valve's third-party debts, and that it paid Qing Lu $50,000 for her assistance.[26] The 8-K did not disclose that Qing Lu and Bin Li are married.[27] The CCAC further alleges that the SEC requested various information from China Valves regarding this transaction.[28] This request prompted China Valves to explain that it structured the transaction as it did because Qing Lu is a Canadian citizen and Watts Water preferred that a foreign owned entity purchase Changsha Valve.[29] China Valves later added that Watts Water preferred not to sell Changsha Valve to a public company.[30]

---

[24]     *Id.* ¶ 75.

[25]     *Id.* ¶ 67.

[26]     *Id.* ¶¶ 68, 72.

[27]     *Id.* ¶ 69.

[28]     *Id.* ¶¶ 71-74.

[29]     *Id.* ¶ 71.

[30]     *Id.* ¶ 73.

Plaintiffs allege that defendants had motive and opportunity to conceal the related-party nature of the transaction "because [it was] highly suspicious and would raise the ire of analysts and investors" and that defendant Siping Fang had a motive to inflate the company's financial results due to certain performance-based salary incentives.[31]

Plaintiffs further allege that China Valves failed to disclose that Changsha Valve was under investigation for FCPA violations at the time of the acquisition.[32] Watts Water disclosed the investigation in its November 4, 2009 10-Q,[33] but China Valves did not disclose it in its own filings until November 21, 2011, at the SEC's prompting.[34] The SEC had issued already a cease and desist order against Watts Water by then, having found multiple FCPA violations.[35] Although the FCPA investigation did not result in any financial penalties for China Valves, plaintiffs allege that the omission was material because FCPA violations can artificially inflate revenues by securing, for example, more business and higher earnings through corrupt activity than a company otherwise would achieve.[36] This, in turn, may make the company's business prospects and earnings potential without corruption uncertain. Plaintiffs allege as well that the FCPA violations could have resulted

---

[31]    *Id.* ¶¶ 234-35.

[32]    *Id.* ¶ 75.

[33]    *Id.*

[34]    *Id.* ¶ 84.

[35]    *Id.* ¶ 76.

[36]    *Id.* ¶ 77.

8

in liability for and penalties against China Valves.[37] Plaintiffs allege additionally that defendants knew about the possible FCPA violations at Changsha Valve based on the facts that China Valves conducted its own investigation[38] and that Watts Water previously had disclosed the issue to the SEC.[39]

B.    *Hanwei Valve Transaction*

Plaintiffs challenge also the manner in which defendants purchased Shanghai Pudong Hanwei Valve, Co., Ltd. ("Hanwei Valve"). China Valves announced its intent to purchase Hanwei Valve on February 11, 2010, and subsequently described the transaction in its April 9, 2010 8-K as an asset purchase for $21 million.[40] This description of the transaction, however, did not match that in China Valves' SAIC filings. There, China Valves disclosed that it purchased Shanghai Hanhuang Valve, the 50 percent owner of Hanwei Valve, on March 1, 2010.[41]  Plaintiffs allege that, in consequence of this initial 50 percent purchase, China Valves' later purchase of the other half of Hanwei Valve was a related-party transaction.[42] Moreover, plaintiffs allege that China Valves labeled the transaction an equity acquisition for $7.47 million completed on October 2010 in its

---

37

 *Id.* ¶ 78.

38

 *Id.* ¶¶ 78-80.

39

 *Id.* ¶ 241.

40

 *Id.* ¶¶ 86-87.

41

 *Id.* ¶ 88.

42

 *Id.*

SAIC filings.[43]

        Plaintiffs further allege that defendants knew or recklessly disregarded all of these facts,[44] that the individual defendants (excepting Bin Li) had a duty to monitor this transaction,[45] and that Siping Fang, Ichi Shih, Binjie Fang, Peter Li, William Haus, and Zengbiao Yu knew about the misstatements or were reckless in failing to discover them because they were required to review the Company's 2009 report included in its 10-K.[46] Plaintiffs' motive and opportunity allegations summarized above apply to this transaction as well.

        *C.*     *The Binjie Fang Receivable*

        The final related-party transaction that plaintiffs allege is a $322,725 loan to Binjie Fang from Zenghou City ZD Valve Co. Ltd. ("ZD Valve"), a China Valves subsidiary, recorded at the end of 2009.[47] Binjie Fang is the legal representative of ZD Valve, a director and chief operating officer of China Valves, and the son of Siping Fang, China Valves' founder, chairman, and ex-chief executive officer.[48]

---

[43]     *Id.* ¶ 90.

[44]     *Id.* ¶ 201.

[45]     *Id.* ¶ 245.

[46]     *Id.* ¶ 247.

[47]     *Id.* ¶ 93.

[48]     *Id.*

    D.    *China Valves' 2008 and 2009 Financial Statements*

        Plaintiffs allege also that China Valves misstated its financial results in 2008 and 2009. They rely on differences between the Company's SEC and SAIC filings as follows:[49]

| | Revenue | | Gross Profit | | Net Income | |
|---|---|---|---|---|---|---|
| | SEC | SAIC | SEC | SAIC | SEC | SAIC |
| 2008 | $65,947,615 | $55,598,826 | $25,865,463 | $15,567,721 | | |
| 2009 | $95,370,012 | $67,604,985 | $46,842,676 | $17,421,555 | $23,353,093 | $5,647,195 |

        The Court's previous opinion held that Bristol had failed to allege that differences between SEC and SAIC figures were not due to differences in accounting principles or, in any case, that the figures reported to the SEC, as opposed to the SAIC numbers, were incorrect.[50] Plaintiffs seek to overcome that holding by alleging that Chinese companies face the risk of "severe penalties" for making false SAIC filings.[51] Plaintiffs contend also that differences in the accounting standards that apply in China and the United States do not account for the discrepancies because "[a]uthoritative bodies have specifically noted that there are not significant differences between U.S. GAAP and Chinese GAAP."[52] Financial statements containing these results were incorporated into China Valves' December 1, 2009 registration statement, which defendants Siping Fang, Ichi Shih,

---

[49]

    *Id.* ¶¶ 46-65.

[50]

    *In re China Valves*, 2012 WL 4039852, at *6.

[51]

    CCAC ¶¶ 48, 55.

[52]

    *Id.* ¶¶ 57-62.

11

Zengbiao Yu, Peter Li, William Haus, and Binjie Fang signed.[53] Furthermore, the Auditor Defendants gave clean opinions on the financial statements and its audit opinion was incorporated in to the Registration Statement and each of the three prospective supplements.[54]

E.      *The Auditors*

As to the Auditor Defendants, plaintiffs allege false and misleading audit reports and opinions regarding China Valves' financial statements. They allege first that the audit report related to the 2007 and 2008 financial statements was false and misleading and that the report was incorporated into the Offering Documents.[55] Second, plaintiffs allege that the audit opinion included in China Valves' 10-K for the year ending December 31, 2009 was false and misleading because the financial statements to which it related failed to disclose certain related party transactions and overstated the Company's financial results.[56]

F.      *The November 8-K and the Citron Report*

Many of these alleged misstatements and omissions were publicized in China Valves'

---

[53]    *Id.* ¶ 150.

[54]    *Id.* ¶¶ 151, 167. China Valves made three separate offerings pursuant to the December 1, 2009 registration statement. The prospectus supplements for those offerings were filed on December 29, 2009, (*id.* ¶¶ 153-54) January 4, 2010 (*id.* ¶ 159), and January 5, 2011 (*id.* ¶ 165).

[55]    *Id.* ¶¶ 21, 254.

[56]    *Id.*

November 8-K and/or in a report by Citron Research ("Citron Report").[57] The November 8-K disclosed that China Valves purchased Changsha Valve from Watts Water, that Able Delight directly paid Watts Water $6.07 million while the remaining $8.93 million satisfied certain third-party obligations, that Qing Lu formed Able Delight in order to serve as a middle person in the transaction, and that Qing Lu received $50,000 in compensation.[58] On November 19, 2010, China Valves' stock fell 15 percent ($1.61 per share).[59]

On January 13, 2011, Citron Research issued its report on China Valves.[60]  It disclosed that Qing Lu is the wife of China Valves' 34 percent shareholder, Bin Li, and that Changsha Valve was under investigation for FCPA violations.[61] As to the Hanwei Valve transaction, it disclosed that, according to China Valves' SAIC filings, the Company owned Shanhai Hanhuang Valve, 50 percent owner of Hanwei Valve, before it purchased the remaining half of Hanwei Valve and that the transaction was an equity acquisition, not an asset purchase.[62] Finally, plaintiffs allege that the Citron Report called into question China Valves' financial results, claiming that the results

---

[57]    Citron Research is "one of the longest-running online stock commentary websites," operating in order to "provide truthful information in an entertaining format to the investing public." *Who Is Citron*, Citron Research, http://www.citronresearch.com/who-is-citron-2/.

[58]    CCAC ¶ 222. The 8-K did not disclose that Qing Lu is Bin Li's wife, that Bin Li held 34 percent of China Valves' shares, or that Bin Li is Siping Fang's first cousin. *Id.* ¶ 225.

[59]    *Id.* ¶ 224.

[60]    *Id.* ¶ 283.

[61]    *Id.* ¶ 284.

[62]    *Id.* ¶ 286.

"are simply too good to be true. The words 'too good' is [sic] not being used lightly here."[63] On January 13, 2011, China Valves' stock fell 5.6 percent, from $8.72 per share to $7.15 per share.[64] It fell further on January 14, closing at $6.87 per share.[65]

*Discussion*

I.   *Legal Standard*

To survive a Rule 12(b)(6) motion, a plaintiff must plead facts sufficient "to state a claim to relief that is plausible on its face."[66] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[67] The Court accepts as true all well-pleaded factual allegations and "draw[s] all inferences in the plaintiff's favor."[68]

In deciding a motion to dismiss, a court considers the complaint and "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents

---

[63]

      *Id.* ¶ 287.

[64]

      *Id.* ¶ 283.

[65]

      *Id.*

[66]

      *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[67]

      *Aschroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556).

[68]

      *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006) (internal quotation marks and citation omitted).

possessed by or known to the plaintiff and upon which it relied in bringing the suit."[69]

II.     *Exchange Act Claims*

    A.     *Elements*

        To state a claim under Section 10(b) of the Exchange Act and Rule 10b-5, a plaintiff must allege that "the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with *scienter*, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff."[70] Section 20(a) imposes liability on control persons for Exchange Act violations by those they control.[71]

        A Section 10(b) claim must satisfy also the pleading standard under Rule 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA").[72] Accordingly, it must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."[73] In

---

[69]
    *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

[70]
    *ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009) (quoting *Lawrence v. Cohn*, 325 F.3d 141, 147 (2d Cir. 2003)).

[71]
    15 U.S.C. § 78t.

[72]
    Fed. R. Civ. P. 9(b); *ATSI Commc'ns Inc.*, 493 F.3d at 99 ("[P]rivate securities fraud actions must also meet the PSLRA's pleading requirements or face dismissal.").

[73]
    *See, e.g.*, *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)); *see also* 15 U.S.C. § 78u-4(b)(1) (complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed").

pleading *scienter*, the PSLRA requires that the complaint "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."[74] In order to satisfy the latter requirement, plaintiffs must allege facts which, if true, would demonstrate "either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness."[75] Pleading motive requires allegations that defendants "benefitted in some concrete and personal way from the purported fraud," but "[m]otives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not constitute 'motive' for purposes of this inquiry."[76] Allegations that "defendants (1) 'benefitted in a concrete and personal way from the purported fraud'; (2) 'engaged in deliberately illegal behavior'; (3) 'knew facts or had access to information suggesting that their public statements were not accurate'; or (4) 'failed to check information they had a duty to monitor'" may suffice to plead the motive aspect of *scienter*.[77] Plaintiffs' pleadings must allow "a reasonable person [to] deem the inference of *scienter* cogent and at least as compelling as any opposing inference one could draw from the facts alleged."[78] In reaching its conclusion, the Court "must consider plausible, nonculpable explanations for the

---

[74]      15 U.S.C. § 78u-4(b)(2).

[75]      *ECA*, 553 F.3d at 198.

[76]      *Id.* (citing *Novak v. Kasaks*, 216 F.3d 300, 307-08 (2d Cir. 2000)).

[77]      *Id.* at 198-99 (quoting *Novak*, 215 F.3d at 311).

[78]      *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324, 127 S. Ct. 2499, 2510 (2007).

16

defendant's conduct, as well as inferences favoring the plaintiff."[79]

      B.     *Section 10(b) Claims*

            1.     *Alleged Related Party Transactions*

Plaintiffs allege Section 10(b) violations based on three alleged related party transactions. Central to these allegations are several accounting rules that govern the disclosure of related party transactions. Plaintiffs specifically point to Financial Accounting Standards Board ("FASB") Accounting Standards Codification ("ASC") 850-10-50-1, which requires that a company disclose certain material related party transactions in its financial statements. Rule 4-08(k)(1) under SEC Regulation S-X also requires disclosure of related party transactions.[80] Item 404(a) instructs a company to disclose a related party transaction involving an amount over $120,000 and in which a related person had or will have a direct or indirect material interest.[81] The definition of "related party" in Item 404(a) includes an immediate family member of a security holder who has a 5 percent interest or greater.[82]

---

[79]

     *Id.*

[80]

     17 C.F.R. § 210.4-08(k)(1).

[81]

     *Id.* § 229.404(a).

[82]

     *Id.* § 229.403(a).

a.      *The Changsha Valve Transaction*

i.      *Materiality of Defendants' Failure to Disclose the Alleged Related Party Nature of the Transaction*

The Court previously dismissed Bristol's Changsha Valve related party claim because it "failed to allege that China Valves' omission regarding Qing Lu's relationship to Bin Li and Siping Fang was material or even required by Item 404 in the first instance."[83] In other words, China Valves' November 8-K disclosed the alleged omissions and/or misstatements regarding the Changsha Valve transaction – with the exception of the relationship among Qing Lu, Bin Li, and Siping Fang. Because Bristol bought stock after the 8-K was released, it had not stated a claim. That remains the case.

Mr. Gibbons, the newly added plaintiff, allegedly bought stock on November 16, 2010, two days before China Valves released the November 8-K. The rationale of the earlier decision on this point therefore does not apply to him.

At the time that Gibbons purchased stock, China Valves' public statements and SEC filings had omitted the facts that Able Delight was formed in order to serve as a middle person in the transaction, that Qing Lu received $50,000 compensation for her role in the transaction, that Able Delight in fact was a shell company for Changsha Valve, which it had purchased from Watts Water, and that the $15 million consideration paid actually was $6.07 million in consideration to Watts Water, with the remaining $8.93 million applied towards Changsha Valve's outstanding third-party obligations.[84] The Court cannot say as a matter of law that these omissions "are so obviously

---

[83]       *In re China Valves*, 2012 WL 4039852, at *7.

[84]       CCAC ¶¶ 67-68

18

unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance," particularly in light of the alleged related-party nature of the transaction under Item 404(a).[85]

### ii.    Scienter

Plaintiffs allege that defendants had motive and opportunity to omit or misstate certain details regarding the Changsha Valve transaction because the transaction was "highly suspicious and would raise the ire of analysts and investors" and that Siping Fang, individually, stood to benefit financially as a result of certain performance based incentives.[86] Plaintiffs allege also that defendants knowingly or recklessly made material misstatements and omissions regarding this transaction based on the facts that: (1) Siping Fang signed the equity transfer agreement on Able Delight's behalf; (2) the Company disclosed in the November 8-K that it arranged for Qing Lu to form Able Delight; (3) China Valves disclosed to the SEC in a June 10, 2011 letter that Siping Fang solicited Qing Lu's assistance; (4) Siping Fang attempted to conceal the truth when he stated "[w]e are extremely pleased with the progress we have made in our negotiations with Able Delight";[87] and (5) the Individual Defendants (excepting Bin Li) had a duty to monitor the transactions and financial statements.[88]

---

[85]
       *ECA*, 553 F.3d at 204 (citation and internal quotations omitted).

[86]
       CCAC ¶¶ 234-35. Specifically, Siping Fang was the beneficiary of a "make good escrow agreement," which provided that he would receive 12,583,032 shares of common stock held by Bin Li upon the fulfillment of certain earnings targets. *Id.*

[87]
       *Id.* ¶ 240.

[88]
       *Id.* ¶¶ 245-47.

Defendants in turn argue that the allegations regarding investor and analyst concern are too general and that Bin Li – the person obliged to contribute the stock that Fang would receive if the company met certain financial targets – has an interest in ensuring that Fang would receive the payout only if properly deserved. This, they contend, would serve as a counterweight to any motive possessed by Fang.[89] As to knowledge and recklessness, defendants argue that plaintiffs have not alleged facts showing that they knew that the failure to report was inappropriate or that the Changsha Valve transaction was material, and that generalized allegations of a duty to monitor are insufficient.[90] They further attempt to rebut plaintiffs' allegations regarding Siping Fang's role in the transaction, asserting that his participation merely shows why he "had no reason to believe that [it] . . . was, in substance, a related-party transaction as opposed to a structured acquisition negotiated at arm's length."[91]

Plaintiffs' motive and opportunity allegations cannot withstand the motions to dismiss. Allegations that a director or officer stands to benefit financially from a company's improved financial performance are insufficient,[92] as are generalized claims regarding investor

---

[89]

China Valves' & Independent Defendants' Memorandum in Support of Motion [DI 90] at 36-37 (citing CCAC ¶ 235).

[90]

*Id.* at 38-40, 42.

[91]

*Id.* at 41.

[92]

*ECA*, 553 F.3d at 201 ("If scienter could be pleaded solely on the basis that defendants were motivated because an inflated stock price or improved corporate performance would increase their compensation, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions. [I]ncentive compensation can hardly be the basis on which an allegation of fraud is predicated." (citation and internal quotations omitted)).

Moreover, plaintiffs do not plead that financial gains related to any alleged omissions or

concerns.[93]

The allegations regarding conscious misbehavior and recklessness are more compelling. Defendants cite to the Second Circuit's decision in *ECA*, which held that the plaintiffs there failed sufficiently to allege *scienter* in the context of a related party 10b-5 claim because they "fail[ed] to allege sufficient facts to support an inference that JPMC knew that the failure to report Mahonia as a related party was inaccurate."[94] But the Second Circuit went on to say that "[i]n order to support this inference, Plaintiffs would have to allege facts showing that JPMC's transactions with Mahonia were 'material.'"[95] Although the Court is not convinced that pleading materiality – thereby triggering the SEC's disclosure requirements – is sufficient to support a finding of *scienter* rather than merely necessary,[96] Siping Fang's statement in the February 18, 2010 disclosure that China Valves was "pleased with its progress" in its "negotiations with Able Delight" sufficiently bolsters plaintiffs' allegation that Fang knew that he was making a material misstatement.[97] This statement, which made no logical sense in light of China Valves' true relationship with Able Delight, of which Siping Fang was undoubtedly aware based on his role in establishing Able

---

misstatements concerning the Changsha Valve transaction were necessary or sufficient to trigger the release of shares to Siping Fang.

[93]

*E.g.*, *In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 293-94 (S.D.N.Y. 2011).

[94]

*ECA*, 553 F.3d at 202.

[95]

*Id.*

[96]

*See, e.g.*, *Novak*, 216 F.3d at 309 ("Finally, allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim. . . . Only where such allegations are coupled with evidence of 'corresponding fraudulent intent,' . . . might they be sufficient." (citations omitted)).

[97]

CCAC ¶ 240.

Delight, permits an inference that Siping Fang intentionally misled investors to create the illusion of an arms length transaction, as plaintiffs allege.[98]

Finally, plaintiffs adequately have alleged loss causation based on the drop in China Valves' share price after it filed its November 8-K disclosing, among other things, that the Changsha Valve purchase was a related-party transaction.

### iii.    The FCPA Investigation into Changsha Valve

The Court's previous dismissal of Bristol's FCPA-related claim was premised on its failure to allege adequately that the omission was material when Bristol purchased stock in January 2011.[99] The plaintiffs have cured that deficiency, having added allegations that the FCPA violations may have led to inflated revenues, thereby "making future earnings potential uncertain" because earlier earnings may have resulted from corruption[100] and because a violation could have resulted "in substantial penalties and liabilities" to China Valves, which assumed successor liability from Watts Water.[101]

Plaintiffs have failed, however, to allege facts sufficient to raise a strong inference of *scienter*. The CCAC does not allege that anyone at China Valves even knew about the FCPA

---

[98]

Plaintiffs do not adequately allege that the officers, directors, and audit committee members had *scienter* based on a duty to monitor. The complaint alleges broadly that these individuals had a duty to monitor the Company's "transactions and financial statements," *id.* ¶¶ 245, 305, alleging nowhere how and why the individual defendants, aside from Siping Fang, would have learned the true nature of the Changsha Valve transaction.

[99]

*In re China Valves*, 2012 WL 4039852, at *8.

[100]

*Id.* ¶ 77.

[101]

*Id.* ¶¶ 78, 83.

investigation into Changsha Valve during the Relevant Period. Indeed, plaintiffs state only that "[t]he fact that Watts Water disclosed the potential FCPA violations to authorities and in its reports filed with the SEC prior to China Valves' acquisition of Changsha Valve strongly suggests that Watts Water disclosed the investigation and possible violations to China Valves. Alternatively, any amount of due diligence would have uncovered their existence."[102] While it is of course possible that Watts Water disclosed the investigation to China Valves and/or that China Valves read Watts Waters' 10-Qs, it is equally possible that China Valves was entirely unaware of the FCPA investigation. Having failed even to allege facts showing that defendants knew about the investigation, plaintiffs have certainly failed to raise a strong inference of *scienter*.[103]

a.      *The Hanwei Valve Transaction*

This Court previously dismissed Bristol's Section 10(b) claim regarding the Hanwei Valve transaction on materiality grounds, having found that "the related party nature of the Hanwei Valve acquisition boils down to an issue of timing."[104] Plaintiffs have not bolstered their allegation that purchasing Hanwei Valve in two steps versus one step was material. Moreover, plaintiffs have not sufficiently alleged why the fact that the transaction appears to have been finalized in October 2010 rather than April 2010 would have been material to either Bristol or Gibbons, both of whom

---

[102]

  *Id.* ¶ 241.

[103]

  Plaintiffs also allege that defendants essentially admitted knowledge based on the fact that the Company conducted its own FCPA investigation. *Id.* This would be compelling if there were any indication as to *when* the Company conducted that investigation. Based on the available statements, it appears that this could have taken place in 2009, 2010, or 2011. *Id.* ¶ 78; Mitnick Decl. [DI 63] Ex. H at 14.

[104]

  *In re China Valves*, 2012 WL 4039852, at *7.

purchased stock after the transfer had been completed. Finally, as is discussed in more detail below, plaintiffs' allegations of material falsity based on discrepancies in China Valves' SEC and SAIC filings fall short. They argue that defendants incorrectly classified the transaction as a $21 million asset purchase in public statements and SEC filings, but China Valves' SAIC filings form the only basis for asserting that this was false.[105]

### b.    The Binjie Fang Receivable

This Court previously dismissed Bristol's claim that defendants' failure to disclose ZD Valve's $322,725 loan to Binjie Fang was a material omission on the grounds that (1) it had not alleged "whether or when this receivable was collected or that it existed at the time that Bristol purchased stock," and (2) $322,725 is a negligible amount compared to China Valves' overall operations.[106] Plaintiffs have not cured these deficiencies. Thus, plaintiffs have failed to allege with particularity facts sufficient to state a Section 10(b) claim as to the Binjie Fang receivable.

### 2.    China Valves' 2008 and 2009 Financial Results

Plaintiffs allege material misstatements in defendants' 2008 and 2009 financial statements filed with the SEC. The Court's previous opinion dismissed this claim, reasoning that plaintiff failed to allege any plausible basis for believing that the discrepancies were due to anything other than different reporting standards in China and the United States or that the SEC numbers, as

---

[105]    Plaintiffs' failure to allege material falsity based on comparing SEC and SAIC filings is discussed at greater length in relation to the financial statements claim.

[106]    *In re China Valves*, 2012 WL 4039852, at *7, *7 n.80; *see also id.* at n.81 (addressing plaintiff's failure to allege loss causation).

opposed to the SAIC numbers, were incorrect.[107] The new factual allegations are insufficient to cure these defects.

Plaintiffs' core allegation remains the same: that China Valves' 2008 and 2009 financial results – specifically, its reported revenue, gross profit, and net income – must be false because they do not match the company's SAIC filings. The most significant difference alleged is between China Valves' 2009 net income, which was reported to the SEC as $23,353,093 and to the SAIC as $5,647,195.[108] In response to this Court's prior dismissal, plaintiffs add several new allegations.

First, they they now allege that the SEC filings are more likely false than the SAIC filings because "[b]usinesses that file false SAIC filings face a variety of penalties, including fines and revocation of the entity's business license."[109] This is entirely unpersuasive. One who submits false SEC filings face the risk of equally if not more severe penalties, including possible

---

[107]

*In re China Valves*, 2012 WL 4039852, at *5-*6.

[108]

CCAC ¶ 46. As the Court discussed in its previous opinion, the cases that plaintiffs cite for the proposition that discrepancies between SEC and SAIC filings are sufficient to show a material misstatement are not persuasive. *Lewy v. Skypeople Fruit Juice, Inc.*, 11 Civ. 2700, 2012 WL 3957916 (Castel, J.) (S.D.N.Y. Sept. 10, 2012), for example, is entirely distinguishable because plaintiffs in that case alleged that the author of a report (akin to the Citron Report here) conducted an in-country investigation and discovered, among other things, that the company's operations were too small to support the revenue that it claimed in its SEC filings. *Id.* at *4. Moreover, the plaintiffs alleged that the revenue reported to the SEC was ten times higher than the revenue reported to the SAIC. *Id.* Similarly, the plaintiffs in *In re Advanced Battery Technologies, Inc. Sec. Litig.*, 11 Civ. 2279, 2012 WL 3758085 (McMahon, J.) (S.D.N.Y. Aug. 29, 2012) alleged that in-country investigators uncovered that the company's operations and efficiency could not possibly account for its high profit margins relative to competitors, and also alleged discrepancies over nearly four years that included a reported SAIC operation loss of $1 million compared to a reported SEC profit of $10 million. *Id.* at *2-*3.

[109]

CCAC ¶ 48.

imprisonment.[110] Moreover, there is no indication as to whether, how, and to what extent the Chinese government enforces its own rules.

        In addition, plaintiffs fail sufficiently to allege that the filing discrepancies were not due to differences in Chinese and U.S. accounting standards. The CCAC alleges that the Committee of European Securities Regulators ("CESR") indicated that there were no "significant differences between US GAAP and International Financial Reporting Standards ("IFRS"). . . . [or] IFRS and Chinese GAAP on revenue recognition,"[111] and that a law firm "has likewise represented to the SEC in an October 27, 2010 letter that: 'The basic accounting principles and practice of Chinese GAAP are similar to US GAAP.'"[112] It goes on to cite to the revenue recognition rules for the sale of goods in China, alleging that these rules do not differ substantially from U.S. GAAP.[113]

        Auditor Defendants argue that plaintiffs misconstrue the CESR report, and the Court agrees.[114] The CESR report explains that, as of December 2007, there was "a tentative goal of achieving substantial elements of convergence [between U.S. GAAP and IFRS] by the end of

---

[110]

        *E.g.*, *In re L & L Energy, Inc. Sec. Litig.*, 908 F. Supp. 2d 1147, 1153-54 (W.D. Wash. 2012) ("Although conspicuously absent from the Second Amended Complaint, the Court need not turn a blind eye toward the corresponding provisions of United States law when evaluating the strength of the inference of falsity. Wilful misstatements in an SEC filing may result in the temporary suspension of trading in the company's securities, injunctive relief, civil penalties, imprisonment for up to twenty years, and/or criminal fines up to $5,000,000 for individuals or $25,000,000 for corporations. 15 U.S.C. § 78l, § 78u(d), and § 78ff(a). The only reasonable inference is that corporations make false statements to both the SAIC and the SEC at their peril.").

[111]

        CCAC ¶ 57.

[112]

        *Id.* ¶ 58.

[113]

        *Id.* ¶ 60.

[114]

        Auditor Defendants' Memorandum in Support of Motion [DI 87] at 19-20.

2008."[115] As to Chinese GAAP, the Committee stated that it

> "[H]as only been able to undertake limited work in relation to Chinese GAAP as most of the information available to it has only come from two sources, namely the IASB and the Chinese Ministry of Finance. From this work, CESR concludes that China's standards (ASBEs) look substantially similar to IFRS mainly as a result of how they have been derived."[116]

This reveals only that, based on limited information, Chinese GAAP is similar to IFRS, and that U.S. GAAP may or may not have been similar to IFRS by 2008/2009. Plaintiffs' citation to a law firm's submission to the SEC on behalf of a client is equally unpersuasive.  Thus, plaintiffs have failed to allege adequately a material misrepresentation.[117]

3.      *China Valves' Statement of Intent to Change Auditors*

Plaintiffs allege that the Company falsely announced that it was negotiating with a Big Four audit firm to take over for the Auditor Defendants and that it "maintains 'the highest standards of financial transparency.'"[118] As an initial matter, plaintiffs misquote China Valves' press

---

[115]

Steckman Decl. [DI 86], Ex. 9. The copy of the report included in the Steckman Declaration is missing pages 1 and 3. The quoted language comes from page 3 and can be accessed at http://www.esma.europa.eu/system/files/07_761.pdf.

[116]

*Id.* at 4.

[117]

Plaintiffs fail to allege loss causation as well. They rely on the Citron Report's statement that China Valves' financial results "are simply too good to be true. The words 'too good' is [sic] not being used lightly here," CCAC ¶ 287, in claiming that "the Citron Report certainly gave investors notice that the Company's reported financial results might be inflated." Plaintiffs' Memorandum in Opposition to China Valves' & Independent Defendants' Motion [DI 95] at 45. This is entirely speculative and fails adequately to show that the drop in share price was linked to defendants' alleged misrepresentations on their 2008 and 2009 financial statements.

[118]

CCAC ¶¶ 227-28, 293.

release, which in fact states that the company is "committed to establishing the highest standards of financial transparency."[119] More importantly, plaintiffs fail to allege any facts suggesting that these statement were false when made. The fact that the Company did not ultimately retain a Big Four audit firm does not permit an inference that it did not intend or attempt to do so at the time it stated that it was seeking such a relationship.

### 4. *Claims Against the Auditor Defendants*

Plaintiffs' Section 10(b) claim against the Auditor Defendants is dismissed, as well. Plaintiffs allege that the Auditor Defendants are liable because their audit opinion regarding China Valves' financial statements included in its 2009 10-K and opinion regarding the Company's 2007 and 2008 financial statements contained material misstatements and/or omissions, failed to disclose related party transactions, and improperly certified compliance with GAAP and GAAS.[120]

First, plaintiffs do not state a claim as to the audit opinion regarding either the 2007 or 2008 financial statements. They make no specific allegations that the 2007 financial statements contained material misstatements or omissions. As to the 2008 financial statements, the Court's prior holding that plaintiffs had not plausibly pled a material misstatement in the financial statements themselves demands dismissal here. The Auditor Defendants' liability is in an important respect derivative of the Company's – if plaintiffs have failed to allege a material misstatement or omission in the first place, they have failed to allege that the Auditor Defendants erred in not discovering and/or disclosing the phantom misstatement.

---

[119]

> *Id.* ¶ 227.

[120]

> *Id.* ¶ 254.

Second, plaintiffs do not state a claim as to the audit opinion in China Valves' 2009 10-K because it was stated as an opinion.[121] Where auditors state an opinion, which is inherently subjective, a complaint must "allege facts that, if true, would permit a conclusion that [the auditors] either did not in fact hold that opinion or knew that they had no reasonable basis for it" in order to plead a material misstatement or omission.[122] Plaintiffs have not alleged sufficient facts to suggest that the Auditor Defendants actually believed that the financial statements they certified were false or that their audits failed to comply with GAAP and/or GAAS.

C.    *Section 20(a) Claim*

Plaintiffs argue that the Individual Defendants are liable as controlling persons under Section 20(a) of the Exchange Act, which provides that:

> "Every person who, directly or indirectly, controls any person liable under any provision of this chapter . . . shall also be liable jointly and severally with and to the same extent as such controlled person to any person whom such controlled person is liable . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."[123]

---

[121]

China Valves Technology, Inc., Annual Report (Form 10-K) (Mar. 29, 2010) at F-2 ("We believe that our audits provide a reasonable basis for our opinion. In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of China Valves Technology, Inc. and subsidiaries as of December 31, 2009 and 2008, and the results of its operations and its cash flows for each of the years in the two-year period ended December 31, 2009 in conformity with accounting principles generally accepted in the United States of America.").

[122]

*In re Lehman Bros.*, 799 F. Supp. 2d at 299, 302-04; *see also Perry v. Duoyuan Printing, Inc.*, 10 Civ. 7235 GBD, 2013 WL 4505199, at *5 (Daniels, J.) (S.D.N.Y. Aug. 22, 2013); *Fait v. Regions Fin. Corp.*, 712 F. Supp. 2d 117, 121 (S.D.N.Y. 2010), *aff'd* 655 F.3d 105 (2d Cir. 2011).

[123]

15 U.S.C. § 78t(a).

To state a claim under Section 20(a), a plaintiff must allege both a primary violation and control over the primary violator, which "may be established by showing that the defendant possessed 'the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.'"[124]

Plaintiffs have stated a primary violation with respect to the Changsha Valve transaction. They sufficiently allege Section 20(a) control person liability against Siping Fang, Jianbao Wang, Renrui Tang, Ichi Shih, and Binjie Fang, all of whom held senior management positions in the company. Plaintiffs also state a Section 20(a) claim against the audit committee defendants, Zengbiao Yu, Peter Li, and William Haus, all of whom signed China Valves' 2009 10-K, which contains alleged material misstatements concerning the Changsha Valve transaction.[125] Plaintiffs, however, fail to state a claim against Bin Li whose 34 percent ownership does not qualify him as a control person,[126] or Gang Wei, who joined senior management after the alleged misstatements and omissions were made.

III.     *Securities Act Claims*

A.     *Elements*

To state a claim under Section 11 of the Securities Act, a plaintiff must allege that:

---

[124]

*SEC v. First Jersey Sec. Inc.*, 101 F.3d 1450, 1472–73 (2d Cir. 1996) (quoting 17 C.F.R. § 240.12b–2 and adopting this standard for a Section 20(a) claim).

[125]

*E.g.*, *In re Satyam Computer Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 482 (S.D.N.Y. 2013).

[126]

*E.g.*, *In re Alstom SA*, 406 F. Supp. 2d 433, 492 (S.D.N.Y. 2005) ("Minority stock ownership and the ability to appoint a minority of the board do not create power to direct management and policies, and thus do not constitute sufficient control under Section 20(a).").

"(1) she purchased a registered security . . . ; (2) the defendant participated in the offering in a manner sufficient to give rise to liability under section 11; and (3) the registration statement 'contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.'"[127] Section 12(a)(2) imposes liability in similar circumstances where "(1) the defendant is a 'statutory seller'; (2) the sale was effectuated 'by means of a prospectus or oral communication'; and (3) the prospectus or oral communication 'include[d] an untrue statement of a material fact or omit[ted] to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading.'"[128] Section 15 imposes liability on persons that "control[] any person liable" under Sections 11 or 12 of the Securities Act.[129]

### B.      Applicable Pleading Standard

*Scienter*, reliance, and loss causation are not elements of claims under Sections 11 or 12.[130] Ordinarily, Rule 8 applies to such claims.[131] Section 11 and 12 claims that are based on averments of fraud, however, must be pled with particularity under Federal Rule of Civil Procedure

---

[127]

*In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358-59 (2d Cir. 2010) (quoting 15 U.S.C. § 77k(a)).

[128]

*Id.* at 359 (quoting 15 U.S.C. § 77l(a)(2)).

[129]

15 U.S.C. § 77o.

[130]

*Rombach*, 355 F.3d at 169 n.4.

[131]

*Id.* at 171.

9(b).[132] Rule 9(b) requires that such complaints "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."[133]  Pleading fraud and negligence in the alternative is permitted where plaintiffs "draft a separable two-part complaint."[134]

        The Court previously dismissed Bristol's Section 11 and 12 claims, finding that they did not separate its allegations of fraud and negligence adequately. The CCAC, however, cures this defect, as it is structured in such a way that the fraud allegations are confined in one section, wholly separate and apart from the Section 11 and 12 allegations. Specifically, paragraphs 34 through 142 of the CCAC are devoted to alleging the basic facts of each challenged transaction and statement. This section applies to the entire complaint and is devoid of any allegations of fraud. Paragraphs 143 through 173 recite plaintiffs' Securities Act allegations, which also avoid any allegations of fraud. Then, in a separate section entitled "Defendants' False and Misleading Statements Under the Exchange Act," at paragraphs 174 through 282, plaintiffs state their fraud claims under Section 10(b). This structure is sufficient to avoid triggering Rule 9(b)'s application to the Securities Act claims. As a result, plaintiffs need not plead *scienter* or loss causation.[135]

---

[132]     *Id.* ("We hold that the heightened pleading standard of Rule 9(b) applies to Section 11 and Section 12(a)(2) claims insofar as the claims are premised on allegations of fraud.").

[133]     *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

[134]     *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 374-75 (S.D.N.Y. 2011).

[135]     *Rombach*, 355 F.3d at 169 n.4.

C.      *Section 11 Claims*

Plaintiffs allege Section 11 liability against China Valves, Siping Fang, Ichi Shih, Zengbiao Yu, Peter Li, William Haus, Binjie Fang, and the Auditor Defendants for alleged material misstatements in the December 14, 2009 Registration Statement and the related prospectuses filed December 29, 2009, January 4, 2010, and January 5, 2011. These Individual Defendants and China Valves primarily rely on their materiality arguments in seeking to dismiss these claims.

Bristol allegedly purchased China Valves' stock on January 5, 2011 through the third offering under the December 2009 Registration Statement and thus is entitled to raise a Section 11 claim.

Plaintiffs argue also that Bristol may raise a claim also based on alleged misstatements and omissions in the December 29, 2009 and January 4, 2010 prospectuses also under the Second Circuit's recent decision in *NECA-IBEW*.[129] This argument is premature. The question in these motions to dismiss is whether Bristol has stated a cause of action to sue on the various prospectuses. Having purchased stock pursuant to the last prospectus only, it has not stated a Section 11 claim based on the others. Whether it has standing under *NECA-IBEW* to represent shareholders who purchased pursuant to other prospectuses is a class certification question to be decided, if necessary, in due course.

Because China Valves' November 8-K cured nearly all of the Company's previous misstatements regarding the Changsha Valve transaction, the sole remaining omissions that Bristol may allege are that (1) Qing Lu is married to Bin Li and (2) Changsha Valve was under investigation for FCPA violations. This Court already has held that China Valves' failure to disclose Qing Lu's

---

[129]     *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012).

relationship to Bin Li is not sufficient, standing alone, to satisfy the materiality requirement.[130] Thus, Bristol's only available Section 11 claim is that China Valves failed to disclose that Changsha Valve was under investigation for FCPA violations in its January 5, 2011 prospectus. These claims lie only against China Valves, Siping Fang, Zengbiao Yu, Peter Li, William Haus, Ichi Shih, and Binjie Fang.[131]

Bristol's Section 11 claim against the Auditor Defendants is dismissed as well. The claim is premised on the argument that the Offering Documents incorporated the Auditor Defendants' audit report related to China Valves' 2007 and 2008 financial statements.[132] Plaintiffs, however, do not allege any specific misstatements or omissions in the 2007 financial statements, and the Court has already held that plaintiffs have failed to allege any material misstatements or omissions as to the 2008 financial statements. Accordingly, plaintiffs have not stated a claim against the Auditor Defendants based on their audit opinion.[133]

---

[130]

See In re China Valves, 2012 WL 4039852, at *7.

[131]

Siping Fang, Zengbiao Yu, Peter Li, William Haus, and Binjie Fang all are alleged to have signed the December 2009 Registration Statement. See 15 U.S.C. § 77k (providing a cause of action against signers of the registration statement, directors at the time of filing, and accountants who prepared or certified any part of the registration statement or valuation contained within).

Plaintiffs include Jianbao Wang as a Section 11 defendant in CCAC, paragraph 23. Wang is not alleged to have signed the Registration Statement or to have been a director at the time it was filed, nor do plaintiffs defend their claim against him in their brief. Thus, any Section 11 claim against Jianbao Wang is dismissed.

[132]

CCAC ¶¶ 21, 151, 254.

[133]

Plaintiffs do not allege that the Auditor Defendants consented to the incorporation of their 2009 10-K audit opinion into the Offering Documents. In re AOL Time Warner, Inc. Sec. & "ERISA" Litig., 381 F. Supp. 2d 192, 236 (S.D.N.Y. 2004) ("Section 11 imposes liability on an auditor only for material misstatements or omissions in an audit report that is included in an SEC registration statement with the auditor's consent.").

D.      *Section 12(a)(2) Claims*

Defendants do not contest that China Valves was a "statutory seller" under Section 12(a)(2) or that Bristol's January 5, 2011 purchase was pursuant to a prospectus. Thus, Bristol's Section 12(a)(2) claim survives to the extent that it relates to China Valves' failure to disclose Changsha Valve's potential FCPA liability in the January 5, 2011 prospectus.

E.      *Section 15 Claim*

For the reasons stated above relating to control under Section 20(a), plaintiffs have adequately alleged control person claims as to all of the Individual Defendants except Bin Li.

*Conclusion*

For the foregoing reasons, the Auditor Defendants' motion to dismiss the CCAC [DI 85] is granted in all respects. The motion of China Valves and the Individual Defendants [DI 89] is granted to the extent that

1.      Claim I is dismissed as to Jianbao Wang and, except insofar as it relates to China Valves' alleged failure to disclose the FCPA investigation into Changsha Valve, as to China Valves and all other Individual Defendants.

2.      Claim II is dismissed as to China Valves except insofar as it relates to China Valves' alleged failure to disclose the FCPA investigation into Changsha Valve.

3.      Claim III is dismissed as to Bin Li and, except insofar as it relates to China Valves' alleged failure to disclose the FCPA investigation into Changsha Valve, as to all other Individual Defendants.

       4.     Claim IV is dismissed as to China Valves and the Individual Defendants, except insofar as it relates to the alleged failure to disclose the alleged related-party nature of the Changsha Valve transaction.

       5.     Claim V is dismissed as to Bin Li and, except insofar as it relates to the alleged failure to disclose the alleged related-party nature of the Changsha Valve transaction, as to all other Individual Defendants.

       SO ORDERED.

Dated:       October 21, 2013

                                                   Lewis A. Kaplan
                                              United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)